**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| | : | |
| XIA ZHAO and DAVID EHRMANN, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| SKINNER ENGINE COMPANY; FRANCIS | : | CIVIL ACTION |
| SHAW & CO., LTD.; FRANCIS SHAW & | : | |
| CO. (MANCHESTER) LTD.; FRANCIS | : | NO. 2:11-CV-07514-WY |
| SHAW CABLE MACHINERY; BARWELL | : | |
| POLYMER MACHINERY CO.; POLYMER | : | |
| MACHINERY CO.; FARRELL | : | |
| CORPORATION a/k/a HF MIXING | : | |
| GROUP; HF RUBBER MACHINERY, INC.; | : | |
| and SHAR SYSTEMS, INC. | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**

YOHN, J.                                                           November 8, 2012

        Plaintiffs Xia Zhao and David Ehrmann bring suit against several defendants alleging

negligence, strict liability, breach of warranty, and loss of consortium after Ms. Zhao severed

three fingers in a machinery accident.  Currently before me is a motion to dismiss by Francis

Shaw & Co., Ltd. ("Shaw Ltd."), Francis Shaw & Co. (Manchester) Ltd. ("Shaw Manchester"),

and Francis Shaw Cable Machinery ("Shaw Cable"), collectively "the Francis Shaw defendants,"

pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).  For the reasons below, the

motion to dismiss is granted with respect to Shaw Ltd. and Shaw Cable for lack of personal

jurisdiction; however, the dismissal is without prejudice to plaintiffs' right to conduct discovery

on the jurisdictional issue for a period of sixty days from the date of this order, and submit a

supplemental memorandum if plaintiff decides to pursue these two defendants.  The claim of a

breach of an express warranty against the Shaw defendants is dismissed with prejudice.  The balance of the motion to dismiss is denied.

## I.        FACTUAL BACKGROUND AND PROCEDURAL HISTORY

According to the amended complaint, on April 7, 2010, Zhao was operating a rubber extrusion machine known as the KO Intermix MK3 ("the machine").  (Am. Compl. ¶ 39.)  Zhao alleges that while operating the machine for its intended purpose she suffered severe injuries, most notably the amputation of three fingers on her dominant right hand.  (*Id*. ¶¶ 39, 40, 46.)  She claims that her injuries are a result of the negligent design, manufacture, and distribution of the machine.  (*Id*. ¶¶ 37-38.)

The machine is owned by Zhao's employer, the West Company ("West"), located in Phoenixville, Chester County, Pennsylvania.  (*Id*. ¶ 8.)  Zhao alleges that on June 28, 1984, West purchased the machine from Skinner Engine Company ("Skinner"), a domestic corporation located in Erie, Pennsylvania, that specializes in the distribution of large machinery.  (*Id*. ¶¶ 4, 8.)  On August 23, 1984, Skinner submitted a purchase request for the machine to Shaw Manchester, a London-based manufacturer that specializes in providing machinery to the rubber and plastic industries.  (*Id*. ¶ 7; *id*. Ex. A.)  Zhao claims that the machine was defectively designed, manufactured, and distributed by Shaw Ltd., Shaw Manchester, and Shaw Cable (*id*. ¶¶ 12, 15, 18) and was "not equipped with every element necessary to make it safe for its intended use." (*Id*. ¶ 41.)  She claims these design defects were the direct cause of her injuries.  (*Id*. ¶ 47.)

Zhao initiated this action in the Court of Common Pleas of Philadelphia County on March 9, 2011.  On April 12, 2011, two defendants not party to this motion filed a notice of removal to federal court prior to the Francis Shaw defendants being served with the complaint.

Zhao then filed a motion to remand, which I granted because the removal lacked the consent of

all of the other defendants who had been served.  On December 7, 2011, after having been served

with the complaint, the Francis Shaw defendants filed a notice of removal for this case.  Again,

the plaintiffs filed a motion to remand.  On May 16, 2012, I denied this motion to remand and

granted the Francis Shaw defendants leave to amend their notice of removal to cure technical

defects in the original notice's jurisdictional allegations.  The Francis Shaw defendants cured the

defects and filed an amended notice of removal on May 25, 2012, which I granted.

Zhao filed an amended complaint with the court on March 27, 2012.  Zhao agreed to

allow the Francis Shaw defendants additional time to respond to the amended complaint, which I

approved.  On June 11, 2012, the Francis Shaw defendants timely filed this motion to dismiss

pursuant to Rules 12(b)(2) and 12(b)(6).

## II.     STANDARD OF REVIEW

### A.     Motion to Dismiss Under 12(b)(2)

When a defendant challenges a court's exercise of personal jurisdiction, the plaintiff bears

the burden of "prov[ing], by a preponderance of the evidence, facts sufficient to establish

personal jurisdiction."  *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992).

But where, as here, the court has not held an evidentiary hearing on the issue, "the plaintiff need

only establish a prima facie case of personal jurisdiction" to survive dismissal.  *Miller Yacht*

*Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004).  Under this standard, the court must accept

the plaintiff's allegations as true and resolve any factual disputes in the plaintiff's favor.  *See id.*

But even under this standard, the plaintiff may not "rely on the bare pleadings alone in order to

withstand [dismissal]"; the plaintiff must respond to the motion to dismiss with "actual

3

proofs"—such as "sworn affidavits or other competent evidence"—not "mere allegations." *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984).

A district court may generally assert personal jurisdiction over a defendant to the extent permitted under the law of the state in which the court sits. *See* Fed. R. Civ. P. 4(k). Because this court sits in Pennsylvania, the scope of its personal jurisdiction over a nonresident defendant is defined by Pennsylvania's long-arm statute, which provides that a Pennsylvania court may exercise jurisdiction over a person "to the fullest extent allowed under the Constitution of the United States." 42 Pa. Cons. Stat. § 5322(b) (discussing scope of specific jurisdiction); *see also* § 5301(a) (discussing scope of general jurisdiction). Hence, the court may exercise personal jurisdiction over a defendant as long as it does not violate due process. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413-14 (1984).

Due process requires that a defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). The Supreme Court has explained that these "minimum contacts must have a basis in some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 109 (1987) (internal quotation marks omitted). And "[t]he nature of these contacts must be such that the defendant should be reasonably able to anticipate being haled into court in the forum state." *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987).

To determine whether a court may exercise personal jurisdiction over a foreign defendant,

4

it is necessary for a court to examine the defendant's contacts with the forum in relation to the nature of the claims. *See Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001). If the cause of action arises from or is related to the defendant's contacts with the forum state, the courts of that state have specific jurisdiction over the defendant, provided those contacts are substantial enough so as to not offend due process. *See Helicopteros*, 466 U.S. at 414 & n.8. Alternatively, if the defendant maintains "continuous and systematic" contacts with the forum state, the courts of that state have general jurisdiction over the defendant and may entertain suits against the defendant on any claim. *See id.* at 414–16 & n.9.

It is not clear from the amended complaint exactly what type of personal jurisdiction Zhao invokes. The defendants, however, object to both. Accordingly, I will address both theories.

### B.   Motion to Dismiss Under 12(b)(6)

In deciding a motion to dismiss under Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citation omitted). The pleading standard of Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice. *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The complaint must contain sufficient factual matter to be plausible on its face. *See id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"; a sheer possibility that a defendant acted unlawfully is not sufficient. *Id.* To avoid dismissal, plaintiffs "must allege facts to 'nudge [their] claims across the line from conceivable to plausible.'" *Mann v. Brenner*, 375 F. App'x 232, 235 (3d Cir. 2010) (quoting *Twombly*, 550 U.S. at 570).

## III. DISCUSSION

### A. Personal Jurisdiction

In their motion to dismiss, the Francis Shaw defendants state that Zhao's complaint should be dismissed due to a lack of personal jurisdiction for two reasons: (1) Zhao names two entities (Shaw Ltd. and Shaw Cable) as defendants that did not exist at the time the machine was sold, and (2) Shaw Manchester lacks the requisite minimum contacts for the court to maintain jurisdiction. Those arguments are addressed in order.

### 1. Improperly Named Defendants

Zhao names Shaw Ltd. and Shaw Cable as defendants. The Francis Shaw defendants claim that neither entity currently exists, nor did either entity exist when the machine was allegedly manufactured and sold in 1984. (Mot. to Dismiss 1.) The Francis Shaw defendants assert that Shaw Ltd. changed its name to Francis Shaw plc on January 25, 1982, more than two years prior to the sale of the machine. (*Id*. Ex. B.) The affidavit of Fiona Margaret Gillespie, corporate secretary for Francis Shaw plc further states that Francis Shaw plc currently exists as a corporation in the United Kingdom, but has no employees or operations. No information was given with reference to its activities between 1982 and the present. With respect to Shaw Cable, the Francis Shaw defendants state that such an entity has never existed. (*Id*. Ex. B.) There is,

however, an entity by the name of Francis Shaw Wire and Cable Machinery Ltd. that was incorporated on September 17, 1996, more than a decade after the alleged sale of the instant machine.  This corporation changed its name to Francis Shaw Cable Machinery Ltd. on September 25, 1995 and was dissolved on December 21, 2004.[1]  (*Id*. Ex. B.)

As previously stated, when a defendant raises a jurisdictional defense, the burden shifts to the plaintiff to establish a prima facie case that the relevant jurisdictional requirements are met. *See Mellon Bank (East) PSFS v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992).  All that is required is that the plaintiff make out a "prima facie case for the exercise of personal jurisdiction by 'establishing with reasonable particularity sufficient contacts between the defendant and the forum state.'" *Id*. (quoting *Provident Nat. Bank v. Cal. Fed. Sav. & Loan Assoc.*, 819 F.2d 434, 437 (3d Cir. 1987)).  "The plaintiff must sustain its burden of proof through 'sworn affidavits or other competent evidence.'" *N. Penn Gas Co. v. Corning Natural Gas Corp.*, 897 F.2d 687, 689 (3d Cir. 1990) (quoting *Stranahan Gear Co. v. NL Industries, Inc.*, 800 F.2d 53, 58 (3d Cir. 1986)).

Here, Zhao has failed to provide any competent evidence to make out a prima facie case for personal jurisdiction over Shaw Ltd. or Shaw Cable.  Zhao has not provided any evidence that shows either entity had any contact with Pennsylvania.  Instead, Zhao provides exhibits that suggest a theory of successor liability between Shaw Ltd. and Francis Shaw plc.  (Opp'n to Mot. to Dismiss Exs. 7-14.)  (Actually, it would appear to be the same corporation by a different name.)  Still, Zhao fails to show any relevant contacts with the forum on behalf of either entity.

---

[1]The Francis Shaw defendants support their motion with the affidavit of Fiona Margaret Gillespie, the corporate secretary for Francis Shaw plc, which attests to the corporate structure of Francis Shaw plc and the other Francis Shaw entities.

Zhao offers as evidence of contacts with the forum a letter between Skinner and Shaw Manchester discussing the particulars of the machine.  (Am. Compl. Ex. A.)  That correspondence was solely between Skinner and Shaw Manchester; it did not mention any other Francis Shaw entity.  Accordingly, that letter is irrelevant in deciding whether this court may exercise jurisdiction over Shaw Ltd. or Shaw Cable.

In sum, Zhao's exhibits bolster the argument by the Francis Shaw defendants that Shaw Ltd. and Shaw Cable are improperly named defendants over which the court has no jurisdiction because plaintiffs have not established a prima facie case of jurisdiction.  Accordingly, those parties are dismissed.  However, plaintiffs state that they requested a deposition regarding Gillespie's affidavit, and perhaps other discovery on the jurisdictional issue, and have not received it.  Although it would appear that this may well be a pointless endeavor in view of the information submitted by Gillespie, I will give plaintiffs a period of sixty days to conduct discovery on the jurisdictional issues as to these two defendants, if plaintiffs consider that to be a worthwhile endeavor.  If they choose to do so, plaintiffs may then submit a supplemental memorandum on the jurisdictional issue as to these two defendants within ten days after the close of discovery, and said defendants may file a supplemental reply memorandum within ten days thereafter.

### 2.    Personal Jurisdiction Over Francis Shaw & Co. (Manchester) Ltd.

The Francis Shaw defendants also argue that Shaw Manchester lacks the requisite contacts with the forum to support personal jurisdiction.  They contend that the court is devoid of both general and specific personal jurisdiction over Shaw Manchester.  While I agree that general personal jurisdiction over Shaw Manchester does not exist, I find the appropriate contacts

required for exercising specific jurisdiction.

### a.   General Jurisdiction

"To obtain general jurisdiction over a corporation in Pennsylvania, the corporation must either: (1) be incorporated in Pennsylvania or licensed as a foreign corporation in the Commonwealth, (2) consent to jurisdiction, or (3) carry on a 'continuous and systematic part of its general business' within the Commonwealth." *Endless Pools Inc. v. Wave Tec Pools, Inc.*, 362 F. Supp. 2d 578, 581 (E.D. Pa. 2005) (citing 42 Pa. Cons. Stat. § 5301(a)(2)).  To reach the threshold for "continuous and systematic" contacts, "the level of a defendant's activity in the state must be 'significantly more than mere minimum contacts.'" *Pac. Emp'rs Ins. Co. v. AXA Belgium S.A.*, 785 F. Supp. 2d 457, 467 (E.D. Pa. 2011) (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)).  "The general jurisdiction standard 'demands contacts with the forum which approximate physical presence.'" *Id.* (quoting *Nationwide Contractor Audit Serv., Inc. v. Nat'l Compliance Mgmt. Serv., Inc.*, 622 F. Supp. 2d 276, 284 (W.D. Pa. 2008)).

Zhao's amended complaint generally avers that "[a]t all times relevant hereto, Shaw Manchester availed itself to the jurisdiction of Pennsylvania."  (Am. Compl. ¶ 14.)  To the extent that this statement argues for general jurisdiction over Shaw Manchester, the argument fails. Shaw Manchester has not consented to Pennsylvania's jurisdiction, nor is Shaw Manchester licensed as a foreign corporation in Pennsylvania.  That leaves "continuous and systematic" contacts as the only available avenue, and the plaintiffs have not set forth a prima facie case that those contacts exist.  The complaint mentions only one contact between Shaw Manchester and the Commonwealth of Pennsylvania: the shipping of the machine to Skinner in Erie,

Pennsylvania. One contact over twenty-six years certainly is not "systematic and continuous."

In support of her argument for general jurisdiction, Zhao provides a June 1, 1995, press release that states that Skinner became the exclusive North American licensee for "Francis Shaw of England." Not only is this not enough to establish continuous and systematic contacts with Pennsylvania—that relationship could have ended the next day—but without more information it also is not clear to me that there is prima facie evidence that "Francis Shaw of England" is an alias for Shaw Manchester. As demonstrated by the named defendants alone, it appears there are numerous separate and distinct Francis Shaw entities in London; I cannot attribute the proffered contacts to Shaw Manchester solely based on the press release in the name of Francis Shaw of England.

Zhao, who bears the burden of establishing sufficient contacts with the forum to maintain general jurisdiction, has failed to show that Shaw Manchester's contacts with Pennsylvania are enough to "render [it] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A., v. Brown*, 131 S. Ct. 2846, 2851 (2011). Therefore, I conclude that the court lacks general jurisdiction over Shaw Manchester.

### b.    Specific Jurisdiction

A court may assert specific jurisdiction over a defendant if the plaintiff can show that the defendant has minimum contacts with the forum, and that those contacts give rise to a claim that "relates to conduct purposefully directed at the forum state." *Henning v. Suarez Corp.*, 713 F. Supp. 2d 459, 464 (E.D. Pa. 2010) (quoting *Manning v. Flannery*, No. 09-03190, 2010 WL 55292, at *5 (E.D. Pa. Jan. 6, 2010)). The Third Circuit has established a three-part test for determining if specific jurisdiction exists:

10

First, the defendant must have "purposefully directed [its] activities" at the forum.  Second, the litigation must "arise out of or relate to" at least one of those activities.  And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.' "

*O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007) (internal citations omitted).  I look to this test in evaluating Shaw Manchester's contacts with Pennsylvania.

### i.      Purposefully Directed Activities

First, I must determine whether Shaw Manchester purposefully directed its activities at the forum.  For guidance, the Third Circuit has stated that "what is necessary is a deliberate targeting of the forum."  *Id*.  And while more numerous contacts may assist in a finding of specific jurisdiction, "[w]here the contacts evaluated are those that give rise to the litigation, even one contact with the forum may be enough to justify jurisdiction . . . ."  *Grand Entm't Grp., Ltd. v. Star Media Sales*, Inc., 988 F.2d 476, 483 (3d Cir. 1993) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 n.18 (1985)).

I find that Shaw Manchester directly targeted this forum when it shipped the machine to Skinner at its Erie, Pennsylvania address.  While it may be true that Shaw Manchester did not know who the end-user of the machine would be or where that user would be located, it did know for certain that the machine would find a home, however temporary, in Erie.  This direct targeting of Pennsylvania is enough to satisfy the purposeful-availment prong of the specific-jurisdiction inquiry.

In its argument against specific jurisdiction, Shaw Manchester relies heavily on the two "stream of commerce" theories that the Supreme Court first announced in *Asahi Metal Industry Company v. Superior Court of California*, 480 U.S. 102 (1987).  Under Justice O'Connor's

theory, the placement of a product into the stream of commerce that eventually ends up in the forum state is not enough for personal jurisdiction; what is needed is "[a]dditional conduct of the defendant [that] may indicate an *intent or purpose to serve the market* in the forum State . . . ." *Asahi*, 480 U.S. at 112 (plurality opinion) (emphasis added). Justice Brennan had a more lenient view of the stream of commerce: as long as a defendant knew that the product *could end up* in the forum state, and the defendant received some economic benefit from that forum state, then facing litigation in that state should not come as a surprise. *See id*. at 117 (Brennan, J., concurring in part and concurring in judgment) (emphasis added). The Third Circuit has not specifically adopted either line of reasoning, and thus counsels district courts to apply both when evaluating specific jurisdiction under a stream of commerce theory. *See Pennzoil Products. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 207 n.11 (3d Cir. 1998). Shaw Manchester argues that the court's specific jurisdiction will fail under either theory. I disagree.

Shaw Manchester first argues that specific jurisdiction fails under Justice O'Connor's theory because there was no "*additional conduct* to show the Francis Shaw Manchester intended to serve the market in Pennsylvania." (Mot. to Dismiss 12.) In support of its argument, it asserts that there is no evidence that "Shaw Manchester designed any machine specifically for a Pennsylvania market, or advertised in Pennsylvania, or took part in any of the other examples of 'additional conduct' explained in *Asahi*."[2] (*Id.*) Next, it argues that Zhao's claim fails under Justice Brennan's theory because there is nothing to suggest that "Francis Shaw Manchester

---

[2]In *Asahi*, Justice O'Connor provided the following examples of "additional conduct": "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Asahi*, 480 U.S. at 112 (plurality opinion).

knew that the subject would have its *final* destination in Pennsylvania." (*Id.* 13.)  Shaw

Manchester suggests that, because Skinner could have sent the machine anywhere in the world,

the lack of foreseeability as to the finality of the machine's destination absolves it of

jurisdictional amenability.  (*See id.*)

Finally, Shaw Manchester likens its situation to that of the defendant in the recently

decided *J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S. Ct. 2780 (2011).  There, a plaintiff

injured his hand while operating a metal-shearing machine.  *See J. McIntyre*, 131 S. Ct. at 2786

(plurality opinion).  The machine that caused the accident was manufactured by J. McIntyre

Machinery, Ltd. ("J. McIntyre") in England, then sold to an independent U.S.-based distributor

located in Ohio, which in turn sold the machine to the plaintiff's employer located in New Jersey.

*See id.*  J. McIntyre's contacts with New Jersey were modest; a total of four pieces of machinery

ended up in the state after being placed into the "stream of commerce."  *See id.*  The New Jersey

Supreme Court held that jurisdiction over J. McIntyre was proper because the injury occurred in

New Jersey, because J. McIntyre "knew or reasonably should have known" that its product could

have ended up in New Jersey, and because it failed to take some precaution to prevent the

machine from being distributed to New Jersey.  *See id.*

A plurality of the Court disagreed and reversed the New Jersey Supreme Court.  Justice

Kennedy stated that "[t]he principle inquiry in cases of this sort is whether the defendant's

activities manifest an intention to submit to the power of a sovereign."  *Id.* at 2788 (plurality

opinion).  "This Court's precedents make clear that it is the defendant's actions, not his

expectations, that empower a State's courts to subject him to judgment."  *Id.* at 2789 (plurality

opinion).  The plurality concluded that J. McIntyre never "engage[d] in any activities in New

Jersey that reveal[ed] an intent to invoke or benefit from the protection of [New Jersey's] laws." *Id*. at 2791 (plurality opinion).

I find Shaw Manchester's arguments under *Asahi* unpersuasive and its reliance on *J. McIntyre* misplaced.  In *Asahi*, both Justices O'Connor and Brennan were examining what was needed in order for a court to maintain jurisdiction over a foreign defendant that did not *directly target* the forum state.  There, the Court deemed improper a California state court's exercise of personal jurisdiction over a Japanese defendant that sold tire valve assemblies to a Taiwanese tire tube manufacturer, which then sold some of the tires in California.  *Asahi*, 480 U.S. at 108. Justice O'Connor stated personal jurisdiction was improper because the Japanese defendant had not "purposefully avail[ed] itself of the California market."  *Id*. at 112 (plurality opinion).  It lacked the "intent or purpose to serve the market in the forum State. . . ."  *Id*. (plurality opinion). Although Justice Brennan found that personal jurisdiction was improper because it did not comport with "fair play and substantial justice," he would have allowed personal jurisdiction under a stream of commerce theory because the defendant was aware that the final product could be marketed in the forum state, and because the defendant *received an economic benefit* from the forum state. *See id*. at 117 (Brennan, J., concurring in part and concurring in judgment).  The analysis under each theory, however, rested on the fact that the Japanese defendant never directly targeted California.  Here, however, Shaw Manchester did ship the machine in question directly to Pennsylvania.

Similarly, in *J. McIntyre* the foreign defendant's machine took a circuitous route through the Unites States that eventually ended in New Jersey, a state it never directly targeted.  The Court reemphasized that when a foreign defendant does not demonstrate an intention to "invoke

or benefit from the protection" of a forum state's laws, *J. McIntyre*, 131 S. Ct. at 2791 (plurality

opinion), personal jurisdiction will generally be improper.  *See id*. at 2785 (noting there may be

exceptions, "but the general rule is applicable in [a] products-liability case").

Here Shaw Manchester *directly targeted* Pennsylvania.  Shaw Manchester knew from the

moment that the machine left London that it would find a home, whether permanent or

temporary, in Erie, Pennsylvania.  In addition, both stream of commerce theories are also

satisfied.  In terms of additional conduct, Shaw Manchester's correspondence with Skinner

illustrates that the machine was being custom designed for Skinner, and gives no indication that

some further destination was contemplated between the parties.  (Am. Compl. Ex. A.)  The

economic benefit to Shaw Manchester—a critical factor under Justice Brennan's stream of

commerce theory—was conferred by Skinner from Pennsylvania; where Skinner sent the

machine thereafter had no impact on Shaw Manchester's economic gain.

As Justice Kennedy noted in *J. McIntyre*, in determining the appropriateness of

exercising personal jurisdiction, a court must ask whether "the defendant's activities manifest an

intention to submit to the power of a sovereign."  131 S. Ct. at 2788 (plurality opinion).  Shaw

Manchester confuses this inquiry with a defendant's ability to predict the final destination of its

product.  As the First Circuit summarized, "The test is not knowledge of the ultimate destination

of the product, but whether the manufacturer has purposefully engaged in forum activities so it

can reasonably expect to be haled into court there . . . ."  *Dalmau Rodriguez v. Hughes Aircraft

Co.*, 781 F.2d 9, 15 (1st Cir. 1986).  I conclude that Shaw Manchester's direct targeting of

Pennsylvania satisfies the first prong of the specific personal jurisdiction analysis.

### ii.     Arise Out Of or Relate To

Next, the court must determine if the plaintiff's claims "'arise out of or relate to' one of the [defendant's] contacts." *Sandy Lane Hotel*, 496 F.3d at 318.  While the Third Circuit has not announced an exact standard by which to examine this prong of the analysis, it has stated that "[t]he causal connection can be somewhat looser than the tort concept of proximate causation, but it must nonetheless be intimate enough to keep the quid pro quo proportional and personal jurisdiction reasonably foreseeable."  *Id*. at 323 (internal citations omitted).

The Third Circuit has stated that, given the opportunity to do so, the Pennsylvania Supreme Court would adopt the Restatement (Third) of Torts in lieu of the Restatement (Second) of Torts.  *See Sikkelee v. Precision Airmotive Corp. et al.,* No. 12-8081 (3d Cir. Oct. 19, 2012); *Covell v. Bell Sports, Inc.*, 651 F.3d 357, 359 (3d Cir. 2011); *Berrier v. Simplicity Mfg., Inc.*, 563 F.3d 38, 40 (3d Cir. 2009).  Section 1 of the Restatement (Third) of Torts clearly states, "One engaged in the business of selling or otherwise distributing products who sells or distributes a defective product is subject to liability to harm to persons or property caused by the defect."  Restatement (Third) of Torts: Prod. Liab. § 1 (1998).  Here, Zhao alleges that Shaw Manchester sold a defective product to a company in Pennsylvania that directly led to her injury.  This causal connection between the alleged sale of the defective machine and Zhao's injury is well within the Third Circuit's boundaries to satisfy the second criterion for personal jurisdiction.

### iii.      Fair Play and Substantial Justice

The final inquiry is "whether the exercise of jurisdiction would otherwise comport with 'traditional notions of fair play and substantial justice.'"  The Supreme Court has offered several factors to consider, notably "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the

16

interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Burger King*, 471 U.S. at 477-78 (quoting *World-Wide Volkswagen*, 444 U.S. at 292) (quotation marks omitted).  The Court in *Asahi* further noted that "[t]he procedural and substantive interests of other nations" may be considered.  *Asahi*, 480 U.S. at 115.  The Third Circuit cautions, however, that "[t]he existence of minimum contacts makes jurisdiction presumptively constitutional, and the defendant 'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Sandy Lane Hotel*, 496 F.3d at 324 (quoting *Burger King*, 471 U.S. at 477).

Shaw Manchester argues that "[f]orcing Francis Shaw Manchester to litigate in a Pennsylvania court would violate the traditional notions of fair play and substantial justice." (Mot. to Dismiss 14.)  In support of this argument, Shaw Manchester re-states its belief that Shaw Manchester has no connection with Pennsylvania, and in conclusory language asserts that to bring Shaw Manchester "into a Pennsylvania court based upon Plaintiffs' vague allegations of some unspecified involvement with a product sold more than twenty years ago violates due process."  (*Id*.)  Again, I disagree.

The factors listed in *Asahi* and *Burger King* weigh in favor of Pennsylvania as the proper forum.  The plaintiff was both injured in Pennsylvania and resides in Pennsylvania.  The Commonwealth obviously has an interest in affording relief to its injured citizens.  The allegedly defective machine is located in Pennsylvania.  When weighed against these factors, the burden on Shaw Manchester, which sold and delivered the machine to a company in Pennsylvania, to defend the lawsuit in Pennsylvania is slight.  While this may not be the most convenient location

for Shaw Manchester, that inconvenience is not enough to render this court's jurisdiction

unreasonable.

Having found that Shaw Manchester's contacts are sufficient to satisfy the Third Circuit's

three-part test, I conclude that specific jurisdiction is proper.

### B.     Failure to State a Claim

The Francis Shaw defendants also ask this court to dismiss Zhao's amended complaint

for a failure to state a claim upon which relief can be granted.  The crux of their argument is that

Zhao has failed to identify exactly which defendant designed, manufactured, or distributed the

machine; therefore, Zhao's "shotgun approach" to pleading must fail under the strict pleading

standards of Rule 8.  (Mot. to Dismiss 14.)  I disagree, and will allow Zhao's claims to proceed,

except for her claim of a breach of an express warranty, which fails due to insufficient factual

allegations.

Zhao alleges four cognizable claims in her amended complaint: negligence, strict liability,

breach of warranty (express and implied), and loss of consortium.[3]  In each count, Zhao provides

sufficient factual information for each element of the claim to state a plausible case for relief.

For instance, with respect to her negligence claim, Zhao lists twenty-five ways in which the

defendants breached their duty of care, including design failure, failure to warn, failure to equip

the machine with proper guarding, and failure to properly issue a timely recall.[4]  (Am. Compl.

---

[3]Zhao's amended complaint lists a total of five counts.  Count IV is labeled "Plaintiff v. Defendants," and appears to be a general allegation of causation.  This is not an independent claim, but rather an element of a negligence claim.  I will disregard count IV and apply the alleged causation to Zhao's negligence claim.

[4]To state a claim of negligence under Pennsylvania law, "the plaintiff must establish the following elements: the defendant owed [the plaintiff] a duty; the defendant breached the duty;

¶¶ 51a, i, l, x.)  Similarly, under her strict liability claim, Zhao offers fourteen ways in which the machine that caused her injuries was defective.[5]  With respect to the claim for a breach of an implied warranty, Zhao has alleged that the machine was warranted "as a sound, quality product, in good working condition."  (Am. Compl. ¶ 67.)  As such, a defect in the machine would be a breach of an implied warranty under Pennsylvania law—an allegation Zhao has certainly made.[6]  Finally, the amended complaint states that David Ehrmann, Zhao's husband, experienced a "loss of consortium, companionship, society, assistance and solace" as a result of the incident.  (Am. Compl. ¶ 82.)  Ehrmann's allegations of a loss of society and companionship due to Zhao's injury are enough to state a claim of loss of consortium; further specifics need not be stated.[7]

Zhao's allegations of a breach of express warranty is the only claim that lacks a sufficient factual basis.  An express warranty is created through "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain .

the plaintiff suffered actual harm; and a causal relationship existed between the breach of duty and the harm."  *French v. Commonwealth Assocs., Inc.*, 980 A.2d 623, 630-31 (Pa. Super. Ct. 2009).

[5]For a strict liability claim under the Restatement (Third) of Torts, a plaintiff must establish that "[o]ne engaged in the business of selling or otherwise distributing products" did in fact "sell[] or distribute[] a defective product," defined as a product that, "at the time of sale or distribution, contains a manufacturing defect, is defective in design, or is defective because of inadequate instructions or warnings."  Restatement (Third) of Torts: Prod. Liab. §§ 1-2 (1998).

[6]Pennsylvania's implied warranty statute states that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."  13 Pa. Cons. Stat. § 2314(a).  To be merchantable, a good must be "fit for the ordinary purposes for which such goods are used."  § 2314(b)(3).

[7]In Pennsylvania, "[l]oss of consortium is a loss of services, society, and conjugal affection of one's spouse."  *Darr Constr. Co. v. Workmen's Comp. Appeal Bd.*, 715 A.2d 1075, 1080 (Pa. 1998) (quoting *Anchorstar v. Mack Trucks, Inc.*, 620 A.2d 1120, 1121-22 (Pa. 1993)).

. . .” 13 Pa. Cons. Stat. § 2313(a)(1).  Zhao offers only a bare allegation that there was a general

warranty for a “sound, quality product” that would be “in good working condition.”  (Am.

Compl. ¶ 67.)  This is far from showing a specific affirmation of fact or promise.  Furthermore, a

party who did not purchase a product directly from the manufacturer may only enforce an express

warranty “under circumstances where an objective fact-finder could reasonably conclude that: (1)

the party issuing the warranty intends to extend the specific terms of the warranty to the third

party (either directly, or through an intermediary); and (2) the third party is aware of the specific

terms of the warranty, and the identity of the party issuing the warranty.”  *Goodman v. PPG

Indus., Inc*., 849 A.2d 1239, 1246 (Pa. Super. Ct. 2004).  Here, Zhao has not pleaded any facts to

show that the Francis Shaw defendants issued a warranty, that they intended to extend the

warranty to a third party, or that she was aware of the “specific terms of the warranty.”  In fact,

Zhao admits in her amended complaint that she “is not in possession of the written warranty,”

and presumes that Shaw Manchester would be in possession of that information.  (Am. Compl.

¶ 68.)  Such stark allegations fall short of the pleading standard; accordingly, the breach of

express warranty claim is dismissed.

      The real issue with respect to the amended complaint, and what the Francis Shaw

defendants contend, is whether Zhao can state her claims against all of the defendants en masse.

To support their argument that Zhao’s amended complaint lacks sufficient specificity, the Francis

Shaw defendants rely on a recent decision in *Esposito v. I-Flow Corporation*, No. 10-cv-3883,

2011 WL 5041374 (E.D. Pa. Oct. 24, 2011).  The plaintiff in *Esposito* required shoulder surgery

after being involved in an automobile accident.  *See id*. at *1.  Following the surgery, a pain

pump was inserted into the plaintiff’s shoulder, through which the plaintiff received pain relief

medications.  *See id*.  Later, the plaintiff experienced several shoulder complications, including severe pain, loss of movement, and other physical and mental injuries.  *See id*.  The plaintiff alleged that his injuries were caused by the negligence of a collective group of defendants, namely the manufacturers of the pain pump and pain relief medications.  *See id*. at *1, *5.  The district court dismissed the negligence claims because "'the speculative and collective identification of the Defendants fail[ed] to adequately identify which Defendant caused Plaintiff's alleged injury and . . . therefore, is insufficient and speculative under *Twombly* and *Iqbal*.'" Id. at *5 (quoting *Kester v. Zimmer Holdings, Inc.*, No. 2:10-cv-00523, 2010 WL 2696467, at *17 (E.D. Pa. June 16, 2010)).

The Francis Shaw defendants argue that Zhao's claims should be dismissed for the same reason.  *Esposito*, however, is distinguishable from this case.  In *Esposito*, the complaint was dismissed not because the plaintiff asserted claims against a collective group of defendants, but because the complaint "fail[ed] to pinpoint which products from which specific Defendants caused Plaintiff's injuries."  *Esposito*, 2011 WL 5041374, at *6.  As the district court in *Esposito* made clear, "a complaint is not adequately plead if it names several defendants whose product might have been used, but does not actually identify which defendants' products allegedly caused the injury."  *Id*.

In this case, Zhao has identified the specific product that caused the injury: the KO Intermix MK3.  Through her factual allegations, Zhao has made a sufficient showing that her claims are plausible and that she may be entitled to relief.  While Zhao's amended complaint may charge defendants collectively with acting negligently, the pleadings are sufficient to place the individual defendants on notice as to their alleged wrongful conduct.  *See, e.g., Saccomandi v.*

*Delta Airlines, Inc.*, No. 08-1434, 2008 WL 3919365, at *3 (E.D. Pa. Aug. 21, 2008) ("Plaintiff's pleadings are sufficient to put [defendants] on notice even though the pleadings charge the Defendants collectively with acting negligently.").

This is not a case where a plaintiff has alleged fraud against multiple defendants, thus triggering a heightened pleading standard in accordance with Rule 9(b).  *See Tredennick v. Bone*, 323 Fed. App'x 103, 105 (3d Cir. 2008).  Nor is it a case where multiple products, produced by multiple defendants, may have led to a plaintiff's injury because of the negligence of some, one, or none of the defendants, as in *Esposito*.  Here, Zhao's factual allegations have provided the Francis Shaw defendants with the requisite information needed to defend this lawsuit.  While other products liability lawsuits involving multiple products and defendants may require more specified pleadings to pinpoint the alleged wrongful conduct, in a situation such as this where there is only one product involved in causing the accident, the collective defendants are not forced to wonder whether their specific product may have had a part in the injury.  By contrast, all defendants have been adequately notified that their interaction with the lone product in this chain of causality is at issue.  The pleading standard of Rule 8 does not require a plaintiff to provide more.

## IV.   CONCLUSION

For the foregoing reasons, Shaw Ltd. and Shaw Cable are dismissed from this suit without prejudice, with the plaintiffs given the option to conduct discovery for a period of sixty days into the jurisdictional issues as to those two defendants.  If the plaintiffs choose to conduct discovery, they may then submit a supplemental memorandum to the court on the jurisdictional

issues within ten days of the close of discovery.  The defendants will then have ten days to file a supplemental reply memorandum.  Zhao's claim for a breach of an express warranty against the Francis Shaw defendants in count III is dismissed with prejudice.  The balance of the Francis Shaw defendants' motion to dismiss is denied.  An appropriate order follows.