IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| XIA ZHAO et al.<br><br>Plaintiffs<br><br>v.<br><br>SKINNER ENGINE COMPANY et al.<br><br>Defendants | 2:11-cv-07514-WY |



MEMORANDUM

YOHN, J.                                                                                                December 7, 2013

    This products liability action is brought by plaintiffs Xia Zhao and David Ehrmann for injuries suffered by Zhao in the course of her employment with West Pharmaceutical Services, Inc. ("West"). Three defendants remain: Farrel Corporation a/k/a HF Mixing Group ("Farrel Corp."), HF Rubber Machinery, Inc. ("HF Rubber"), and Francis Shaw & Co., (Manchester) Ltd. ("Francis Shaw"). Francis Shaw has crossclaims against Farrel Corp. and HF Rubber seeking contribution and/or indemnification.

    Farrel Corp. and HF Rubber ("Movants") now move for summary judgment on all claims against them. The motion is opposed by Francis Shaw only.[1] For the following reasons, the motion for summary judgment will be granted.

---

[1] Although the plaintiffs do not oppose the motion for summary judgment, they disclaim any endorsement of Movants' factual assertions. (Plaintiffs' response).

1

## I. Background

On June 28, 1984, West ordered a rubber extrusion machine known as a KO Intermix MK3 ("Intermix") from the Skinner Engine Company ("Skinner"). (Purchase Order Form, June 28, 1984, Mov. Ex. B). On August 23, 1984, Francis Shaw—an English corporation and the erstwhile operator of a rubber machinery fabrication business ("the Business")—confirmed the sale of an Intermix to Skinner, with reference number 2994. (Letter from Francis Shaw to Skinner, August 23, 1984, Mov. Ex. C). Nearly thirty years later, on April 7, 2010, Zhao was at the West facilities operating a machine stamped "Shaw KO Intermix MK3, No.2994" and "Feb. 1985." (West Incident Report, Opp. Ex. B; Photographs of West Intermix, Mov. Ex. A). Attempting to clean the West Intermix, Zhao suffered extensive injuries to her right hand. (West Incident Report, Opp. Ex. B).

In December 1997, Francis Shaw sold the Business to Farrell Shaw Limited ("Farrel Ltd.") via an asset purchase agreement entitled "Farrel Shaw Limited Acquisition of the Francis Shaw Rubber Machinery Business" ("Purchase Agreement"). (Purchase Agreement, Mov. Ex. E). Farrel Ltd. is a subsidiary of Farrel Corp., which is a party in this case.[2] Farrel Ltd. is not. In chief, the Purchase Agreement provided for Francis Shaw to "wholly discontinue carrying on the Business" and made Farrel Ltd. "exclusively entitled to carry on and continue the Business and hold itself as doing so in succession to [Shaw]." (Purchase Agreement, Mov. Ex. E). The Agreement transferred most related business assets, but stated that Farrel Ltd. acquired no liability with respect to "any act, neglect, default or omission" prior to the date of the Purchase Agreement. (Purchase Agreement, Mov. Ex. E). Farrel Ltd. operated the Business thereafter, and at least one former Francis Shaw employee carried over through the transition to work for Farrel

---

[2] The motion states that Farrel Shaw Limited was dissolved in 2009, succeeded to by the independent corporation Farrel Limited. Because this distinction is unnecessary to the disposition of this motion, for convenience I use "Farrel Ltd." to refer to either corporate entity.

Ltd. (Deposition of Jayantilal Mistry, Opp. Ex. G). In July 2006, West contacted Farrel Corp. seeking Intermix replacement parts and an Intermix maintenance manual. (Email from West to Farrel Corp., July 11, 2006, Opp. Ex. H). Farrel Corp. subsequently sold Intermix replacement seals and o-rings to West. (Sales Order, July 18, 2006, Opp. Ex. H).

After injuring her hand, Zhao brought suit against numerous defendants, among them Francis Shaw, Farrel Corp., and HF Rubber. Subsequently, Francis Shaw filed crossclaims against Movants seeking contribution and/or indemnification. As we close discovery,[3] Movants file for summary judgment on all claims against them.

## II.  Standard of Review

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation omitted).

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted); *El v. Se. Pennsylvania Transp. Auth. (SEPTA)*, 479 F.3d 232, 237 (3d Cir. 2007). The burden then shifts to the nonmoving party "to make a showing sufficient to establish the existence of . . . element[s]

---

[3] Although additional depositions are outstanding, the discovery deadline has passed and the outstanding depositions do not pertain to the issues relevant to this motion's disposition.

essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "If a nonmoving party fails to make [that showing], there is no issue as to a genuine issue of a material fact and thus the moving party is entitled to judgment as a matter of law" *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 266 (3d Cir. 2007).

"In evaluating the motion, 'the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence.'" *Guidotti v. Legal Helpers Debt Resolution, LLC,* 716 F.3d 764, 772 (3d Cir.2013) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000)). "[A]n inference based upon a speculation or conjecture," however, "does not create a material factual dispute sufficient to defeat entry of summary judgment." *Robertson v. Allied Signal, Inc.,* 914 F.2d 360, 382 n. 12 (3d Cir.1990).

## III. Discussion

Movants' brief asserts that (a) no evidence connects Farrel Corp. to the chain of production or distribution of the West Intermix; and (b) Farrel Corp. is not liable as a successor to Francis Shaw.[4] With respect to HF Rubber, the brief asserts that the record shows no material connection between HF Rubber and the West Intermix.

The response of Francis Shaw does not dispute that Farrel Corp. and HF Rubber were not involved in the design, manufacture, or sale of the West Intermix. Rather, Francis Shaw contends that summary judgment for Farrel Corp. is inappropriate because there are genuine issues of fact as to whether (a) the Purchase Agreement was a *de facto* merger; and (b) Farrel Corp. may have

---

[4] The motion also argues that federal bankruptcy law prohibits plaintiff from claiming that Farrel Corp. is a successor to Skinner. As plaintiffs do not oppose summary judgment and Francis Shaw does not mention this issue in its response, I do not address this point.

4

breached a duty to warn about the West Intermix adopted in the course of its post-sale service relationship with West. The response does not address HF Rubber.[5]

### A. Farrel Corp. and Successor Liability

When a party moving for summary judgment informs the court that the record fails to support an essential element of a claim, the nonmovant must make a showing sufficient to establish the presence of that element to avoid summary judgment. *See Celotex*, 477 U.S. at 323; *Lauren W. ex rel. Jean W.*, 480 F.3d at 266. Addressing the possible successor liability of Farrel Corp., Movants' brief states that "as a dispositive threshold matter, Farrel [Corp.] did not purchase any assets of Francis Shaw. This alone precludes a finding that Farrel [Corp.] is a proper defendant in this action as a successor to Francis Shaw." Memorandum, at *5. The motion continues to allege, "[E]ven if Plaintiff were to claim that Farrel [Corp.] is somehow responsible for the actions of Farrel [Ltd.]—and Plaintiff cannot—Farrel [Ltd.] would not be a proper party to this action." *Id.* These statements effectively notified the court that (a) for Farrel Corp. to have liability as a successor to Francis Shaw, Farrel Corp. must have purchased Francis Shaw assets or be responsible for Farrel Ltd.'s purchase of Francis Shaw assets, and (b) the record did not support either finding. *See Celotex*, 477 U.S. at 322; *El*, 479 F.3d at 237.

Francis Shaw's response identifies only the Purchase Agreement as a possible basis for Farrel Corp.'s liability as a successor to Francis Shaw. But because the Purchase Agreement was between Francis Shaw and Farrel Ltd., Farrel Corp. must have responsibility for Farrel Ltd. if it is to have liabilities from the Purchase Agreement. To this effect, "[i]t is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is

---

[5] Francis Shaw contends that there is still outstanding discovery. However, Francis Shaw filed its opposition on September 27, 2013 and has not submitted any additional evidence since that time by way of depositions, documents, answers to interrogatories, admissions, or affidavits.

not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (internal citations omitted). "Neither the similarity of names between the parent and subsidiary corporation, nor the total ownership of the stock of the subsidiary by the parent, nor the fact that a single individual is the active chief executive of both corporations, will *per se* justify a court in piercing the corporate veil if each corporation maintains a bona fide separate and distinct corporate existence." *Botwinick v. Credit Exch., Inc.*, 419 Pa. 65, 72 (1965) (internal citations omitted).

Francis Shaw's discussion of Farrel Corp.'s possible successor liability does not address the issue of the Farrel Corp.-Farrel Ltd. corporate veil,[6] delving only into the question of whether the Purchase Agreement may properly be considered a *de facto* merger between Francis Shaw and Farrel Ltd.[7] But even if there was a *de facto* merger, it is necessary that the Farrel Corp.-Farrel Ltd. corporate veil be pierced for Farrel Corp. to have liabilities under the Purchase Agreement. *See Bestfoods*, 524 U.S. at 61; *Botwinick*, 419 Pa. at 72. Francis Shaw has submitted no such evidence, or even advanced such an argument. Francis Shaw thus "fail[ed] . . . to establish the existence of an element essential to that party's case," and Farrel Corp. is entitled to summary judgment on the successor liability claim accordingly. *See Lauren W. ex rel. Jean W.*, 480 F.3d at 266.

### B. Farrel Corp. and Post-Sale Acquisition of Duty to Warn

---

[6] Footnote 4 of Francis Shaw's response states that "There is an issue of fact as to Farrel [Corp.]'s interaction with [Farrel Ltd.] and the Purchase Agreement," noting that the Purchase Agreement defines Farrel Corp. as part of the "Purchaser's Group." Francis Shaw does not suggest that Farrel Corp. was actually a party to the Purchase Agreement, nor does it contend the Purchase Agreement's threadbare reference to Farrel Ltd.'s corporate family is a basis for piercing the Farrel Corp.-Farrel Ltd. corporate veil.

[7] Because it is immaterial to the disposition of the motion before me, I will not address whether the Purchase Agreement was a *de facto* merger between Francis Shaw and Farrel Ltd. I only note that in its brief Francis Shaw sometimes conflates Farrel Corp. and Farrel Ltd. even though the evidence shows them to be separate entities.

Francis Shaw next claims that summary judgment is inappropriate because of Farrel Corp.'s dealings with West in 2006 regarding replacement parts and a maintenance manual for the West Intermix. The evidence presented by Francis Shaw against Farrel Corp. is that, long after the Purchase Agreement, Farrel Corp. provided replacement seals and o-rings for the Intermix machine to West at West's request. Francis Shaw has not identified how those parts may have contributed to the accident or how they might have created a duty to warn. According to the response, to the extent that someone had a post-sale duty to warn Zhao or West about defective or dangerous conditions in the West Intermix, this duty may properly belong to Farrel Corp. by virtue of these contacts with West and in light of Farrel Ltd.'s continued operation of the Business. Francis Shaw also relies on evidence that West contacted Farrel Corp. to obtain a maintenance manual for the machine. However, there is no evidence as to whether Farrel Corp. ever responded to that request. Farrel Corp. states it intends to claim the manuals were insufficient to give notice of hazardous conditions and safety features, but there is no evidence tying whatever manual exists to Farrel Corp.

As these theories of liability have not previously been presented to the court by Francis Shaw in its crossclaims, there is a threshold question of whether the duty Francis Shaw describes is cognizable under the applicable law.[8] *See* Fed. R. Civ. P. 56(a) (summary judgment is appropriate when the movant is entitled to judgment as a matter of law).

I apply to this question the substantive law of the state with the greatest interest in its law applying. *See Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 226 (3d Cir. 2007) (federal courts sitting in diversity apply forum state's choice of law rules); *Cipolla v. Shaposka*, 439 Pa. 563, 565 (1970) (Pennsylvania courts apply the substantive law of the state with greatest interest in

---

[8] As Francis Shaw points to no legal authority in support of its claim, I proceed without benefit of counsel's guidance.

application of its law to the question at hand). By all accounts that is Pennsylvania: Pennsylvania is the forum state, plaintiffs' state of residence, the long-term location of the West Intermix, and the state in which plaintiff Zhao was injured.[9] The Third Circuit is clear that federal district courts applying Pennsylvania law are to look to the Restatement (Third) of Torts Sections 1 and 2 for strict liability and products defects claims, notwithstanding that Pennsylvania's substantive products liability law may be in transition.[10] *See Covell v. Bell Sports, Inc.*, 651 F.3d 357, 360 (3d Cir. 2011) (predicting Pennsylvania Supreme Court would adopt the Restatement (Third) for products liability actions if confronted with the issue); *Sikkelee v. Precision Airmotive Corp.*, 2012 WL 5077571 (3d Cir. Oct. 17, 2012) (en banc) (giving *stare decisis* effect to *Covell*).

The Restatement (Third) of Torts does not support Francis Shaw's claim that Farrel Corp. may have acquired a duty to warn by its post-sale interactions with West. The only potentially relevant provision is Restatement (Third) § 13(a), which provides that, under certain circumstances, an asset purchaser can assume a duty to warn of known defects in products sold by the predecessor when it continues the predecessor's line of business.[11] However, § 13(a) plainly does not apply to Farrel Corp.: as discussed above, Farrel Corp. is not alleged to have acquired any assets of Francis Shaw and any liabilities of Farrel Ltd. under § 13 are not properly attributed to Farrel Corp. without an additional showing which Francis Shaw has not made and

---

[9] Francis Shaw and Farrel Corp. have relied on Pennsylvania law throughout their briefs, suggesting no disagreement among the parties as to the applicability of Pennsylvania law in this dispute.

[10] Currently pending before the Pennsylvania Supreme Court is a case presenting the question of "[w]hether this Court should replace the strict liability analysis of Section 402A of the Second Restatement with the analysis of the Third Restatement." *See Tincher v. Omega Flex Inc.*, No. 842 MAL 2012 (Pa., appeal granted March 26, 2013). Oral arguments in *Tincher* were held October 17, 2013. *See* http://ujsportal.pacourts.us/DocketSheets/AppellateCourtReport.ashx?docketNumber=17+MAP+2013.

[11] Restatement (Third) § 13(a) states: "A . . . business entity that acquires assets of a[n]. . . other business entity . . . is subject to liability for harm to persons or property caused by the successor's failure to warn of a risk created by a product sold or distributed by the predecessor if: (1) the successor undertakes or agrees to provide services for maintenance or repair of the product or enters into a similar relationship with purchasers of the predecessor's products giving rise to actual or potential economic advantage to the successor, and (2) a reasonable person in the position of the successor would provide a warning."

8

which the record does not support.[12] More broadly, the Restatement (Third) does not disrupt "[t]he general rule . . . that one owes no duty to protect, and thus no duty to warn, another, even if one realizes that the other is at risk of injury."[13] *Fabend v. Rosewood Hotels & Resorts, L.L.C.*, 381 F.3d 152, 155 (3d Cir. 2004) (citing Restatement (Second) of Torts § 314).

Because its theory of liability is based on a non-cognizable duty, Francis Shaw here fails to state "a claim on which relief could be granted," Fed. R. Civ. P. 12(b)(6), let alone demonstrate that there is a genuine issue of material fact for trial. *See* Fed. R. Civ. P. 56(a). The claim does not survive summary judgment. *See Lauren W. ex rel. Jean W.*, 480 F.3d at 266.

### C. HF Rubber

The motion states that "HF Rubber's sole connection to this matter is that, as a result of a 2008 transaction, HF Rubber is owned by the same German parent company as [Farrel Corp.]." Motion at *10. The Movants contend that this is insufficient to create liability for HF Rubber in this case.

Because Francis Shaw does not respond to this contention, and thus has not pointed to any evidence which would allow the court to make a reasonable inference that HF Rubber is liable, it has failed "to make a showing sufficient to establish the existence of [all] element[s]

---

[12] The fact that Farrel Corp. is not Farrel Ltd. is sufficient to dispose of the question of Farrel Corp.'s possible liability under § 13. But were Farrel Ltd. the named party in this case and it were found to have met the terms of § 13(a)(1), finding that Farrel Ltd. had a duty to warn under § 13 would also require satisfaction of § 13(b)'s four conditions for when a reasonable person would provide a warning. Among these is the requirement of § 13(b)(2) that "those to whom a warning be provided can reasonably be assumed to be unaware of the risk of harm." Restatement (Third) § 13(b)(2). The comment to the Restatement notes that "if users and consumers are at that time generally aware of the risk [of harm] a post-sale warning is not required." Restatement (Third) § 10 *f.*; Restatement (Third) § 13 *c.* (stating § 10 comments apply to § 13). In this sense, § 13(b)(2) is better targeted to latent defects than readily ascertainable design features posing obvious dangers.

[13] I note that I am aware of no other body of law that would impose a duty to warn on Farrel Corp. from the conduct described by Francis Shaw. The Restatement (Second) of Torts does not address post-sale duties to warn. *See* Restatement (Second) of Torts 2D. And although there is caselaw in this judicial district holding that successor corporations can assume a post-sale duty to warn by virtue of their operation of a predecessor's business, *see, e.g. Shane v. Hobam, Inc.*, 332 F. Supp. 526 (E.D. Pa. 1971), I am aware of no cases applying such a duty to a successor's parent corporation or third-party parts suppliers. *See generally* Kenneth Ross and David Prince, *Post Sale Duties: The Most Expansive Theory in Products Liability*, 74 Brook. L. Rev. 963 (2009).

essential to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex* at 322. Accordingly, I am compelled to grant the motion for summary judgment with respect to HF Rubber. *See Lauren W. ex rel. Jean W.*, 480 F.3d at 266.

## IV. Conclusion

For the foregoing reasons, the motion for summary judgment will be granted. An appropriate order will follow.